**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**ABA CARES OF FLORIDA, LLC, d/b/a ABA CENTERS OF FLORIDA (o/b/o Jane and John Doe Members #1-10),**

**Plaintiffs,**

**vs.**

**PUBLIX SUPERMARKETS, INC.,**

**Defendant.**

**CASE NO.: 25-cv-61906-AHS**

**DEFENDANT PUBLIX SUPER MARKETS, INC.'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT OR, IN THE ALTERNATIVE, MOTION FOR MORE DEFINITE STATEMENT AND MEMORANDUM OF LAW IN SUPPORT**

# TABLE OF CONTENTS

**Page**


INTRODUCTION ........................................................ 1

BACKGROUND ........................................................ 6

STANDARD OF REVIEW ........................................................ 7

ARGUMENT ........................................................ 8

I. PLAINTIFFS' STATE-LAW CLAIMS ARE PREEMPTED UNDER ERISA ........................................................ 8

a. Plaintiffs' Claims "Relate to" the Plan ........................................................ 8

b. Florida Statute Sections 627.6131 and 627.6686 do not provide an alternative basis for Plaintiffs' allegations that Publix owed obligations to ABAFL ........................................................ 13

II. THE AMENDED COMPLAINT FAILS TO PLEAD FACTS SUPPORTING THE TWO PURPORTED STATE-LAW CLAIMS ........................................................ 15

a. The Amended Complaint Does Not State a Claim for Unjust Enrichment ........................................................ 15

b. The Amended Complaint Does Not State a Claim for Promissory Estoppel ........................................................ 16

III. THE AMENDED COMPLAINT IS A SHOTGUN PLEADING AND SHOULD BE DISMISSED; IF NOT, IT REQUIRES A MORE DEFINITE STATEMENT ........................................................ 18

CONCLUSION ........................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adventist Health Sys./Sunbelt Inc. v. Med. Sav. Ins. Co.*,
2004 WL 6225293 (M.D. Fla. Mar. 8, 2004) ....16

*Aetna Health Inc. v. Davila*,
542 U.S. 200 (2004) ....9

*Alcalde v. Blue Cross & Blue Shield of Fla., Inc.*,
62 F. Supp. 3d 1360 (S.D. Fla. 2014) ....5, 10, 12, 13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....7

*Autonation, Inc. v. United Healthcare Ins. Co.*,
423 F. Supp. 2d 1265 (S.D. Fla. 2006) ....4

*Barmapov v. Amuial*,
986 F.3d 1321 (11th Cir. 2021) ....20

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ....7

*Beth Wolf, APRN-BC LLC v. Cigna Health & Life Ins. Co.*,
733 F. Supp. 3d 1278 (S.D. Fla. 2024) ....14

*Butero v. Royal Maccabees Life Ins. Co.*,
174 F.3d 1207 (11th Cir. 1999) ....9

*Chiron Recovery Ctr., LLC v. United Healthcare Servs., Inc.*,
2020 WL 3547047 (S.D. Fla. June 30, 2020) ....16

*Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*,
591 F.3d 1337 (11th Cir. 2009) ....9

*Garren v. John Hancock Mut. Life Ins. Co.*,
114 F.3d 186 (11th Cir. 1997) ....9

*Heinen v. Royal Caribbean Cruises LTD.*,
806 F. App'x 847 (11th Cir. 2020) ....19

*Horsley v. Feldt*,
304 F.3d 1125 (11th Cir. 2002) ....5

*Jones v. LMR Int'l, Inc.*,
457 F.3d 1174 (11th Cir. 2006) ....................9

*Kindred Hosp. E. L.L.C. v. Blue Cross & Blue Shield of Fla., Inc.*,
2007 WL 601749 (M.D. Fla. Feb. 16, 2007) ....................19

*Kopel v. Kopel*,
229 So. 3d 812 (Fla. 2017)....................15

*La Ley Recovery Sys.-OB, Inc. v. United Healthcare Ins. Co.*,
193 So. 3d 16 (Fla. 3d DCA 2016) ....................10

*Lab. Physicians, P.A. v. AvMed, Inc.*,
2009 WL 2486328 (M.D. Fla. Aug. 10, 2009) ....................10

*Lordmann Enterprises, Inc. v. Equicor, Inc.*,
32 F.3d 1529 (11th Cir. 1994) ....................12, 13

*In re Managed Care Litig.*,
595 F. Supp. 2d 1349 (S.D. Fla. 2009) ....................9

*Ocean Commc'ns, Inc. v. Bubeck*,
956 So. 2d 1222 (Fla. 4th DCA 2007) ....................8

*Paylor v. Hartford Fire Ins. Co.*,
748 F.3d 1117 (11th Cir. 2014) ....................8

*Peacock Med. Lab, LLC v. UnitedHealth Grp., Inc.*,
2015 WL 2198470 (S.D. Fla. May 11, 2015) ....................17, 18

*S. Broward Hosp. Dist. v. ELAP Servs., LLC*,
2020 WL 7074645 (S.D. Fla. Dec. 3, 2020) ....................5, 12

*S. Broward Hosp. Dist. v. ELAP Servs., LLP*,
2023 WL 6547748 (S.D. Fla. Sept. 30, 2023) ....................15

*Surgery Ctr. of Viera, LLC v. Cigna Health*,
2020 WL 4227428 (M.D. Fla. July 23, 2020) ....................10, 12, 13

*Surgery Ctr. of Viera, LLC v. UnitedHealthcare, Inc.*,
465 F. Supp. 3d at 1215 ....................12

*Swierkiewicz v. Sorema N. A.*,
534 U.S. 506 (2002)....................20

*Tatum v. Bokofsky*,
842 F. Supp. 521 (S.D. Fla. 1994) ....................10

*United Healthcare Servs., Inc. v. Sanctuary Surgical Ctr., Inc.*,
5 F. Supp. 3d 1350 (S.D. Fla. 2014) ....................14

*Universal Express, Inc. v. U.S. S.E.C.*,
177 F. App'x 52 (11th Cir. 2006) ....................2

*Vanguard Plastic Surgery PLLC v. Cigna Health & Life Ins. Co.*,
2024 WL 181552 (S.D. Fla. Jan. 17, 2024) ....................17

*Vanguard Plastic Surgery, PLLC v. United Healthcare Servs., Inc.*,
2022 WL 22825615 (S.D. Fla. June 22, 2022) ....................4, 12

*Vanguard Plastic Surgery, PLLC v. UnitedHealthcare Ins. Co.*,
2023 WL 2257961 (S.D. Fla. Feb. 28, 2023) ....................13, 15

*Weiland v. Palm Beach Cnty. Sheriff's Off.*,
792 F.3d 1313 (11th Cir. 2015) ....................18

*Wilson v. EverBank, N.A.*,
77 F. Supp. 3d 1202 (S.D. Fla. 2015) ....................15

**Statutes**

29 U.S.C. § 1132(d) ....................15

29 U.S.C. § 1144(a) ....................9

ERISA § 502(a)(1)(B) ....................15

Fla. Stat. § 624.638 ....................14

Fla. Stat. § 627.601(2) ....................14

Fla. Stat. § 627.6131 ....................13, 14

Fla. Stat. § 627.651(4) ....................14

Fla. Stat. § 627.6686 ....................13, 14

**Rules**

Federal Rule of Civil Procedure Rule 8(a) ....................7, 8

Federal Rule of Civil Procedure 10(b) ....................8

Federal Rule of Civil Procedure 12(b)(6) .................... *passim*

Federal Rule of Civil Procedure 12(e) ....................1, 8, 20

S.D. Fla. L.R. 5.4(f) ........................................................................................................5

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Publix Super Markets, Inc. (incorrectly named as Publix Supermarkets, Inc.) ("Publix") files this Motion to Dismiss Plaintiffs' Amended Complaint (ECF No. 7, cited hereinafter as the "AC"). Alternatively, Publix moves for a more definite statement pursuant to Federal Rule of Civil Procedure 12(e).

## INTRODUCTION

The Amended Complaint, filed in the name of ABA Cares of Florida, LLC ("ABAFL"), is brought on behalf of eight individuals ("Plan Members") covered by Publix's self-insured Group Health Benefit Plan established and maintained in accordance with the Employee Retirement Income Security Act of 1974 (the "Plan").[1] While the Amended Complaint nominally states it is pursuing claims on behalf of ABAFL (AC ¶ 2), in substance it makes no effort anywhere to identify any purported claim of ABAFL that is separate or distinct in any way from the 8 Plan Members' claims against the Plan. To the contrary, from its outset, the Amended Complaint makes explicitly clear that the Plan "Members and ABAFL are ***collectively*** referred to as [one single] 'Plaintiff.'" AC at 1 (emphasis added). Its two counts (unjust enrichment and promissory estoppel) are brought identically in all respects on behalf of all of the 8 Plan Members <u>and</u> ABAFL as one "Plaintiff," and likewise pursue the exact same relief on all of their collective behalf. AC ¶¶ 89, 96, Prayer for Relief at p. 16. In short, the claims of the 8 Plan Members and any claims purportedly brought on behalf of ABAFL are one and the same and inextricably intertwined.

Plaintiffs posit this lawsuit as a "simple collection case" against Publix (AC ¶ 1). It is not. The parties' dispute actually arises from a fraud scheme orchestrated by ABAFL. *See* AC ¶¶ 71-

[1] *See* AC at 1 (ABAFL "**<u>o/b/o</u>** Jane and John Does Members #1-8 … hereby sues Defendant Publix….")(emphasis added); AC ¶¶ 8, 17–24 (identifying ABAFL and Members #1-8 as parties). *See also* AC ¶ 17 n.1 ("ABAFL has appropriate consent to pursue this action" on behalf of Members #1-8, all minor children, a naked assertion made without identifying any basis for the claimed consent.).

76 (acknowledging the close relationship between this lawsuit and the separate action filed by Publix and the Plan against ABAFL (and its affiliate) in the Middle District of Florida ("Middle District")).[2] In the Middle District case, Publix seeks damages and other relief due to ABAFL's (and its affiliate's) fraudulent conduct. As explained in that lawsuit, ABAFL is an out-of-network provider of Applied Behavioral Analysis ("ABA") therapy services for autism spectrum disorder that has, since at least 2022, submitted fraudulent, deceptive, and improper information to Publix and the Plan's third-party administrator in order to wrongfully induce Publix and the Plan to pay out millions of dollars of benefits. By its lawsuit here, ABAFL is now doubling down, asking that Publix "***as plan administrator***, [with] the ultimate responsibility for payment of the claims" (AC ¶ 27 (emphasis added)) pay Plan benefits to Plan Members for even more of ABAFL's fraudulent claims. In context, then, this lawsuit is a dispute about the parties' rights and obligations relating to what (and when) out-of-network benefits, if any, are available to Plan Members under the Plan when claims for the benefits are fraudulent.

Notwithstanding ERISA's powerful federal preemptive regime, Plaintiffs initially filed a four-count lawsuit in Florida state court, which Publix removed to this Court. Plaintiffs then filed the Amended Complaint, dropping two breach of contract counts while continuing to assert claims for unjust enrichment and promissory estoppel. Plaintiffs' amendment is a superficial and transparent attempt to bury the fact that ERISA preempts their claims seeking alleged unpaid benefits purportedly due to the 8 Plan Members under the terms and conditions of the Plan.

Plaintiffs' attempt to "whitewash" references to ERISA and the Plan from the Amended Complaint, however, is incomplete. Plaintiffs' inability to distance their claims from ERISA in

[2] This Court can consider Publix's Amended Complaint in the Middle District, attached hereto as Exhibit A, because it is a public record referenced in the Amended Complaint at ¶¶ 71-76. *See Universal Express, Inc. v. U.S. S.E.C.,* 177 F. App'x 52, 53–54 (11th Cir. 2006).

*toto* is hardly surprising given those claims are brought on behalf of the Plan Members based on their purported rights and obligations under the Plan. Any claims purportedly being brought on behalf of ABAFL are indistinct from, and instead advance the same theories and seek the exact same relief as, the claims of the Plan Members by virtue of the universal use of the collective term "Plaintiff," conflating all Plaintiffs as one single actor. Thus, any ABAFL claim is wholly derivative of only the same rights the Plan Members assert under the Plan. Unsurprisingly, then, the claims in the Amended Complaint continue to be drafted entirely within an ERISA framework.

From its very beginning (i.e., case caption and opening paragraph), the Amended Complaint makes clear it is brought "o/b/o [on behalf of the] Jane and John Does Members #1-8 (hereafter 'Members')" in their capacities as "beneficiaries of [self-]insurance policies issued [by the Plan] and administered by [Publix]" as the Plan administrator. AC at 1 and ¶ 2.[3] The Amended Complaint likewise identifies Publix as "a self-funded employer that sponsored a health insurance plan" (AC ¶ 16), and as "operating, engaging and conducting the activities of Publix Super Markets Inc. Group Health Benefit Plan." AC ¶ 12. The Amended Complaint asserts claims against Publix because it is the "Plan Sponsor and Plan Administrator of Plaintiff [sic] Publix Super Markets Inc. Group Health Benefit Plan" (AC ¶ 10), because the Plan "is operated by, controlled by, or Defendant Publix has the right of control over Publix Super Markets Inc. Group Health Benefit Plan." (AC ¶ 11), and because "Publix, ***as plan administrator***, retained the ultimate responsibility for payment of the claims." AC ¶ 27 (emphasis added). The services at issue are consistently described as "covered" under the Plan, both throughout the Amended Complaint's enumerated allegations (AC ¶¶ 5, 29–31, 66, 70, 85) and in its titles and headings. (AC at 8-9). Try as they

[3] At times, the Amended Complaint also refers to Plan Members analogously as Plan "insureds." *See, e.g.*, AC ¶ 6.

might, Plaintiffs simply cannot sever their purported state law claims from their inextricably intertwined ERISA roots.

Accordingly, Plaintiffs' claims are preempted by ERISA. Nowhere does the Amended Complaint dispute that the Plan is an ERISA Plan (nor could it do so in good faith). Claims brought on behalf of ERISA plan beneficiaries for payment of benefits under an ERISA Plan (like those alleged for the 8 Plan Members here against the Plan) are paradigmatic examples of claims defensively preempted by ERISA. *See, e.g., Autonation, Inc. v. United Healthcare Ins. Co.,* 423 F. Supp. 2d 1265, 1270 (S.D. Fla. 2006).

On behalf of ABAFL, as explained above, the Amended Complaint makes no claim that is distinct from the claims alleged on the Plan Members' behalf. While claims of health care providers relying on state law duties that are truly independent of ERISA sometimes may not be defensively preempted, Plaintiffs cannot invoke that exception here. *Cf.* AC ¶¶ 69-77. First, Plaintiff's "rate of payment/right of payment" distinction ignores this Court's ruling that the distinction is irrelevant in the defensive preemption context. *Vanguard Plastic Surgery, PLLC v. United Healthcare Servs., Inc.*, 2022 WL 22825615, at *3 (S.D. Fla. June 22, 2022) (Singhal, J.). Second, Plaintiffs identify no contract imposing a duty on Publix independent of ERISA. ABAFL concedes there is no other contract (AC ¶ 58), and Plaintiffs' two counts (unjust enrichment and promissory estoppel) are predicated on no such contract existing. Instead, the only contractual reference on which Plaintiffs' claims are predicated invokes the terms of the Publix ERISA Plan to which the Plan Members are subject. *See, e.g.,* AC ¶ 86. Third, Plaintiffs identify no applicable independent state statutory duty. Plaintiffs' citation to two sections of Florida Code Chapter 627 is misplaced. AC ¶ 7. As explained in the Argument section below, neither is applicable to a group health plan established under ERISA and neither affords a private right of action. Last, the "pre-authorizations" referenced by

Plaintiffs are not independent of ERISA, but instead are issued under and pursuant to the Plan.[4] Accordingly, Plaintiffs' two state law causes of action are preempted by ERISA.

Even if Plaintiffs' claims were not preempted (and they are), Plaintiffs cannot satisfy the state-law elements for either claim. First, there is no viable unjust enrichment claim because Plan Members do not allege they conferred a benefit on the Plan, and the provision of services by ABAFL to Plan Members did not directly confer a benefit upon Publix (Plaintiffs admit as much in AC ¶ 87, acknowledging any "benefit … was conferred [on] the Plan Members"). Second, Plaintiffs cannot state a promissory estoppel claim because they cannot show that the "pre-authorizations" they rely upon, issued under the terms of the Plan, constitute a definite and substantial promise *by Publix* to pay any of the Plaintiffs, including ABAFL, anything. To the contrary, Plaintiffs cannot claim to reasonably rely on them because the pre-authorizations, themselves, expressly state that "[t]his approval does not guarantee payment of benefits."[5] Finally, the Amended Complaint should be dismissed for the independent reason that it is a shotgun pleading because it treats ABAFL and all 8 Plan Members collectively as one single "Plaintiff," fails to specify separately the individual claims, dates of service, and amounts owed for each of the 8 Plan Members in question, and includes only a conclusory-pled count for promissory

---

[4] *Alcalde v. Blue Cross & Blue Shield of Fla., Inc.*, 62 F. Supp. 3d 1360, 1364-65 (S.D. Fla. 2014) (finding health care provider state law claims based on provision of pre-approved services are defensively preempted by ERISA); *Cf. S. Broward Hosp. Dist. v. ELAP Servs., LLC,* 2020 WL 7074645, at *9 (S.D. Fla. Dec. 3, 2020) (distinguishing claims "premised on misrepresentations and omissions" (not preempted) from those based on "**pre-approval to perform medical services based on the plans**." (preempted)) (emphasis added).

[5] The Court may properly consider the language of the "pre-authorizations" that allegedly form the foundation for Plaintiffs' promissory estoppel claim (exemplars attached hereto as Exhibit B). *See* AC ¶¶ 91–92; *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002) (Court may consider documents which are central to the complaint and of undisputed authenticity). Publix files Exhibit B in accordance with S.D. Fla. L.R. 5.4(f) and contemporaneously serves an unredacted version on Plaintiffs' counsel.

estoppel. Such deficiencies warrant dismissal as a shotgun pleading or, if not dismissed, a more definite statement.

## BACKGROUND

Publix, a Florida-based employee-owned business, operates supermarkets and offers employee benefit plans, including health insurance, to its employees and their beneficiaries. AC ¶¶ 9–10. ABAFL offers ABA therapy to children with autism spectrum disorder. *Id.* ¶ 3. ABAFL further alleges that it provided these services to Plan Members on an out-of-network basis, and that the services were covered, authorized, and medically necessary. *Id.* ¶¶ 5, 30–31, 58. Plaintiffs also allege that Publix has failed to properly pay for these services at the "usual and customary" (i.e., billed) rates submitted by ABAFL to the Plan. *See id.* ¶¶ 61–65, 81, 87, 89. Plaintiffs acknowledge the Plan has not made *any* payment for the services at issue in this case because Publix and the Plan assert that any reimbursement claims for those services arise from a healthcare fraud scheme orchestrated by ABAFL. *See* AC ¶¶ 71–76.

On August 25, 2025, Plaintiffs commenced this action against Publix by filing a complaint in the Circuit Court of the Seventeenth Judicial Circuit of Florida, in and for Broward County, Florida. ECF No. 1-2. The original complaint contained the two causes of action found in the Amended Complaint, as well as two other counts, and sought payment under each count of amounts allegedly due as a result of 10 Plan Members' rights to certain benefits under the terms of the Plan for ABA therapy services ABAFL allegedly rendered to those Plan Members. *See* ECF No. 1-2, ¶¶ 67–105.

On September 23, 2025, Publix removed the case from the Circuit Court of the Seventeenth Judicial Circuit of Florida, in and for Broward County, Florida to the United States District for the Southern District of Florida. ECF No. 1. In its Notice of Removal, Publix showed that Plaintiffs' claims were inextricably linked to the Plan's terms and conditions based on, among other things,

ABAFL's assertions that coverage pre-authorizations by Publix issued pursuant to and under the Plan entitled Plaintiffs to payment. *See generally* ECF No. 1; *see also* ECF No. 1-2, ¶¶ 69, 100–102.

On September 29, 2025, in response to Publix's Notice of Removal, Plaintiffs filed the Amended Complaint, asserting substantially the same allegations against Publix for allegedly failing to compensate Plaintiffs for services ABAFL allegedly rendered to now 8 (instead of 10) Plan Members; Plaintiffs abandoned their two breach of contract claims, leaving only equitable claims for unjust enrichment and promissory estoppel. In an effort to try to avoid ERISA, Plaintiffs deleted some, but not all, references to the Plan, and to ABAFL's purported status as a "third-party beneficiary" of obligations Publix allegedly owed to Plan Members and made other efforts at artfully pleading around ERISA. But, as noted above, the Amended Complaint continues to be brought on behalf of 8 minor children Plan Members, who ABAFL avers purportedly have consented to be parties to this lawsuit. *See* FN 1, *supra.*

**STANDARD OF REVIEW**

Federal Rule of Civil Procedure 8 requires a pleading to set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although Rule 8(a) does not require "detailed factual allegations," it does demand "more than labels and conclusions;" a "formulaic recitation of the cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In assessing the sufficiency of a complaint, courts are not bound to accept legal or factual conclusions as true. *Id*. at 678–79, 681. When a complaint is "so vague and

ambiguous that a party cannot reasonably prepare a response," and thus fails to comply with Rule 8(a) and/or Rule 10(b), this Court can dismiss it as a shotgun pleading under Rule 12(b)(6) or require a more definite statement under Rule 12(e). *See, e.g., Paylor v. Hartford Fire Ins. Co.,* 748 F.3d 1117, 1126-27 (11th Cir. 2014) (a "defendant served with a shotgun complaint should move the district court to dismiss the complaint pursuant to Rule 12(b)(6) or for a more definite statement pursuant to Rule 12(e)").

## ARGUMENT

### I. PLAINTIFFS' STATE-LAW CLAIMS ARE PREEMPTED UNDER ERISA

#### a. Plaintiffs' Claims "Relate to" the Plan

In their Amended Complaint, Plaintiffs bring two equitable claims against Publix: one for Unjust Enrichment (Count I) and another for Promissory Estoppel (Count II, incorrectly numbered as Count III). AC ¶¶ 78–96. With respect to unjust enrichment, Plaintiffs contend that by providing allegedly medically necessary services to Plan Members, ABAFL conferred a benefit on Publix that Publix retained without issuing usual and customary payment. AC ¶¶ 84, 87. With respect to promissory estoppel, Plaintiffs contend that the pre-authorizations that Plan Members received from the Plan "constitute[d] unambiguous definite and substantial written promises" to pay for services rendered and that Publix failed to pay. AC ¶¶ 92, 96. In each instance, Plaintiffs demand judgment "for the balance of its full billed charges," or in the alternative, "for the usual and customary rates" for the medical services ABAFL allegedly rendered. AC ¶¶ 89, 96. The Plan Member-Plaintiffs' equitable claims must be dismissed because there is an express contract governing Publix's (as Plan administrator) and the Plan's obligations to pay benefits under the Plan. *See Ocean Commc'ns, Inc. v. Bubeck*, 956 So. 2d 1222, 1225 (Fla. 4th DCA 2007) ("A plaintiff cannot pursue an equitable theory, such as unjust enrichment or quantum meruit, to prove entitlement to relief if an express contract exists.").

All of the Plaintiffs' state-law claims also must be dismissed because, at their core, they are claims for payment of benefits under the Plan and are thus defensively preempted by ERISA. As the U.S. Supreme Court has instructed, "ERISA includes expansive preemption provisions, which are intended to ensure that employee benefit plan regulation would be exclusively a federal concern." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004).

"Defensive" (sometimes called "express") preemption, which is the basis for Publix's Motion to Dismiss, is based in ERISA's express preemption provision, Section 514(a).[6] *Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1344 (11th Cir. 2009). Operating as a substantive defense, defensive preemption preempts any state-law claim that "relates to" an ERISA plan. *Id.* A state law "relates to" an ERISA plan if it has a "connection with or reference to" an ERISA-governed plan. *See In re Managed Care Litig.*, 595 F. Supp. 2d 1349, 1355 (S.D. Fla. 2009). A state-law claim is "related to" an ERISA benefit plan "whenever the alleged conduct at issue is intertwined with the refusal to pay benefits." *Garren v. John Hancock Mut. Life Ins. Co.*, 114 F.3d 186, 187 (11th Cir. 1997).

Plan Members' state-law claims to recover benefits purportedly due to them under the Plan are classic examples of claims preempted by ERISA, and thus claims "on behalf of" and/or with the "consent" of Plan Members #1-8 must be dismissed.[7] Any claim of ABAFL, as part of the omnibus "Plaintiff" in the Amended Complaint, is indistinct from the Plan Members' claims and likewise is preempted. Indeed, courts routinely apply defensive preemption to dismiss state-law claims from providers seeking payment for services provided pursuant to ERISA-governed plans

---

[6] Section 514(a) provides that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by the statute. 29 U.S.C. § 1144(a).

[7] *See, e.g.*, *Jones v. LMR Int'l, Inc.*, 457 F.3d 1174, 1179-80 (11th Cir. 2006); *see also Butero v. Royal Maccabees Life Ins. Co.*, 174 F.3d 1207,1212 (11th Cir. 1999).

when they do not rely on an obligation independent of ERISA or the ERISA plan's obligations to its plan members. *See, e.g. Alcalde*, 62 F. Supp. 3d at 1365; *see also Surgery Ctr. of Viera, LLC v. Cigna Health*, 2020 WL 4227428, at *5 (M.D. Fla. July 23, 2020); *Lab. Physicians, P.A. v. AvMed, Inc.*, 2009 WL 2486328, at *1 (M.D. Fla. Aug. 10, 2009); *La Ley Recovery Sys.-OB, Inc. v. United Healthcare Ins. Co.*, 193 So. 3d 16, 19 (Fla. 3d DCA 2016).

*Alcalde* is particularly instructive of this bedrock legal principle. In that case, the plaintiff, a health care provider, asserted state-law claims, including unjust enrichment, based on the provision of medical services to patients covered by the defendant's health insurance plan. *Alcalde*, 62 F. Supp. 3d at 1362. The plaintiff alleged that the medical services were pre-approved and pre-scheduled with the defendant, and were medically necessary, but that the defendant later reduced the offered rate of payment and failed to make a full payment for the services provided. *Id.* at 1364. The court dismissed all of the state-law claims, holding that they were "related to" the patients' ERISA plans. *Id.* at 1365. Specifically, the court concluded that "Plaintiff provided medical services to patients that were participating in Defendant's employee benefits plan….Plaintiff is now seeking payment for the medical services that were provided based on the patients' participation in the ERISA plans. Accordingly, any determination of the amount Defendant owes Plaintiff relates to the ERISA plans." *Id.*

In the same way, Plaintiffs' unjust enrichment and promissory estoppel claims must be dismissed because they seek payment for benefits under the Plan. Despite Plaintiffs' pedantic drafting in an effort to avoid this result, the Amended Complaint's allegations leave no other conclusion. *See Tatum v. Bokofsky*, 842 F. Supp. 521, 527 (S.D. Fla. 1994) ("ERISA preempts state common law breach of contract and tort claims for benefits under ERISA-regulated benefit plans, ***even when the ERISA statute itself is not mentioned in the pleading.***" (emphasis added)).

Throughout the Amended Complaint, Plaintiffs allege that the 8 Plan Members are beneficiaries of insurance policies issued by Publix (*see, e.g.* AC ¶¶ 2, 4), that ABAFL is an "out-of-network provider" (*id.* ¶¶ 58, 63), and that ABAFL rendered "covered" services (*see, e.g. id.* ¶¶ 5, 29-31, 70). But there are no separate "insurance policies" – just the Plan. The services are "covered" or not "covered" based on the Plan terms. And ABAFL is not an "out-of-network" provider writ large; instead, it is an out-of-network provider only vis-à-vis and under the terms of the Plan. To that end, Plaintiffs allege that certain obligations stem from Publix's contractual relationship with the Plan Members, including, for instance, that "Publix, as plan administrator, retained the ultimate responsibility for payment of the claims." *Id.* ¶ 27. In other words, Plaintiffs repeatedly reference the Plan, contend that the services were "covered" pursuant to the Plan, and contend that Publix has certain payment obligations by virtue of the Plan. Plainly, Plaintiffs' claims "relate to" the Plan.

Further, any analysis by this Court of the merits of Plaintiffs' claims will require the Court to consider the Plan. Plaintiffs' collectively asserted claims allege certain duties that Publix purportedly owes to the Plan Members, including that Publix "is required to provide the medically necessary services to its insureds." *Id.* ¶ 86. The Amended Complaint is replete with references alleging that ABAFL's services were "covered" under the Plan (*e.g., id.* ¶ 85). The pre-authorizations that Plaintiffs generically contend form the basis of the promissory estoppel claim are issued pursuant to and expressly subject to Plan terms and conditions (i.e., "subject to current contract coverage"). *See, e.g.,* Ex. B at ECF pp. 2, 4. Plaintiffs' claims necessitate that the Court examine the Plan's terms and conditions to determine when, and if, there is any payment obligation where, as here, the claims have been fraudulently submitted.

Plaintiffs' conclusory allegations that their claims "concern only the rate of payment, rather than right of payment claims" (*see id.* ¶¶ 69–70), are irrelevant in the context of defensive preemption, as this Court has previously made explicitly clear. *See Vanguard Plastic Surgery, PLLC*, 2022 WL 22825615, at *3; *Cigna Health*, 2020 WL 4227428, at *3. Defensive preemption – asserted by Publix in this Motion – is derived from a different section of ERISA than complete preemption, is broad, "applying well beyond those subjects covered by ERISA itself," and as such, "the court's defensive preemption analysis is not limited to the narrow right/rate test." *Id. Alcalde* confirms this point—demonstrating that state-law claims, including unjust enrichment, are still defensively preempted and dismissed, regardless of whether they involve a "rate of payment" dispute. 62 F. Supp. 3d at 1365.

*Lordmann Enterprises, Inc. v. Equicor, Inc.*, 32 F.3d 1529 (11th Cir. 1994), and various District Court cases that have applied *Lordmann* to conclude certain state-law claims by health care providers against plan insurers or administrators are not preempted under ERISA, do not save Plaintiff ABAFL's claims here because Plaintiffs fail to allege any duty or obligation independent of ERISA (instead relying on Publix's duty "***as plan administrator***, [with] the ultimate responsibility for payment of the claims"). AC ¶ 27 (emphasis added). Thus, those cases are all readily distinguishable from the present lawsuit (and the litany of cases cited by Publix above, including *Alcalde*); they all involved alleged agreements separate from and extraneous to the ERISA plans at issue, or else detailed allegations of independent misrepresentations or fraud by the defendant payor. *See Lordmann,* 352 F.3d at 1532–34 (involving claims of fraud and negligent misrepresentation); *Surgery Ctr. of Viera, LLC v. UnitedHealthcare, Inc.*, 465 F. Supp. 3d at 1215, 1222 (involving a repricing agreement and acknowledging difference in posture from *Alcade*); *S. Broward Hosp. Dist.*, 2020 WL 7074645, at *1, *9 (involving alleged misrepresentations and

omissions); *Vanguard Plastic Surgery, PLLC*, 2021 WL 4651504, at *1, *3 (involving a shared-savings network agreement). Here, Plaintiffs disclaim the existence of any agreement separate from the Plan. AC ¶ 58. And, as noted above, to the extent that Plaintiffs rely on "pre-authorizations" as the basis for Publix's supposed obligation, those pre-authorizations make clear they are subject to "current contract coverage" and are therefore inextricably intertwined with the terms of the Plan. *See* Ex. B at ECF pp. 2, 4. *Accord Cigna Health*, 2020 WL 4227428, at *5-6 ("*UnitedHealthCare* is unhelpful to [plaintiff] here….In finding no defensive preemption, [the court] explicitly noted [plaintiff] had alleged an independent basis for its claims…Such is not the case here, where [plaintiff] relies on the Plan to state its claims….These claims—for breach of contract, unjust enrichment, and quantum meruit—'are not the types of claims' *Lordmann* exempted.").

Here, like the plaintiffs in *Cigna Health* and *Alcalde*, ABAFL cannot point to any agreement or third-party contract upon which its claims arise besides the Plan or pre-authorizations that are subject to and intertwined with the Plan's terms. Plaintiffs concede this in their Amended Complaint. *See* AC ¶ 79 (admitting that "ABAFL was not contracted with Defendant"); *id.* ¶ 58 (admitting that "ABAFL had no direct agreement with Defendant"). Instead, lacking any other independent agreement or basis to rely on, Plaintiffs collectively bring only claims for payment of benefits that are plainly "related to" the terms and conditions of the Plan. As a result, those claims are subject to defensive preemption under ERISA and should be dismissed.

**b. Florida Statute Sections 627.6131 and 627.6686 do not provide an alternative basis for Plaintiffs' allegations that Publix owed obligations to ABAFL**

In a desperate attempt to find a basis independent of ERISA for their claims, Plaintiffs assert that "[t]his is a civil action for damages to recover underpaid healthcare claims pursuant to Florida Statute §§ 627.6131 and 627.6686…." AC ¶ 7. However, Plaintiffs' reliance here is wholly

misplaced. First, by their terms, neither provision applies to *group* health plans established under ERISA, like the Plan.[8] *See* Fla. Stat. § 627.601(2); *see also United Healthcare Servs., Inc. v. Sanctuary Surgical Ctr., Inc.*, 5 F. Supp. 3d 1350, 1364 (S.D. Fla. 2014) (as to Section 627.6131, "it is apparent that the statutory provision in question—which falls under Part VI of Florida Chapter 627, Insurance Rates and Contracts—**governs *individual*, and not *group*, health *insurance policies*" (emphasis added)). Likewise, Section 627.6686 is like all of the other provisions within Part VII of Chapter 627 that do "not apply to any plan which is established or maintained by an individual employer in accordance with [ERISA][.]" Fla. Stat. § 627.651(4); *see also United Healthcare Servs.*, 5 F. Supp. 3d at 1364 ("In contrast, group health policies are governed by the provisions of Part VII of Chapter 627, Florida Statutes, 'Group, Blanket and Franchise Health Insurance Policies,' ***which specifically excepts from the scope of its application any plan established or maintained by an individual employer in accordance with ERISA***." (quoting Fla. Stat. § 627.651(4)) (emphasis added)).

Second, even if they did apply, neither of the cited provisions from Chapter 627 affords Plaintiffs a private right of action. *See, e.g., Beth Wolf, APRN-BC LLC v. Cigna Health & Life Ins. Co.*, 733 F. Supp. 3d 1278, 1284 (S.D. Fla. 2024), *appeal dismissed*, 2024 WL 3984064 (11th Cir. Aug. 15, 2024) (the court was "not persuaded that sections 627.6131 and 624.638 impliedly confer private causes of action upon healthcare providers"—meaning that "[t]he Plaintiffs' claim premised upon those statutes is dismissed with prejudice, and further amendment would be futile"). Thus, the inapplicable provisions of Chapter 627 which, in any event, do not afford Plaintiffs a

[8] Publix is the Sponsor and Administrator of the Plan, under which Publix pays the majority of the total cost for health care coverage for its employees. Stated differently, Publix and the Plan are two separate and distinct entities. Plaintiffs improperly conflate and combine the two entities, notably failing to include the Plan, itself, as a Defendant.

private right of action, are not a basis independent of ERISA for Plaintiffs' otherwise-preempted claims that merely seek recovery of benefits allegedly due under the terms of the Plan. Accordingly, they must be pursued, if at all, under ERISA § 502(a)(1)(B).

## II. THE AMENDED COMPLAINT FAILS TO PLEAD FACTS SUPPORTING THE TWO PURPORTED STATE-LAW CLAIMS

Separately and independently, Plaintiffs' claims should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) because Plaintiffs have not adequately pleaded facts to support the state-law elements of the unjust enrichment and promissory estoppel claims.

### a. The Amended Complaint Does Not State a Claim for Unjust Enrichment

As the Florida Supreme Court instructs, "to prevail on an unjust enrichment claim, the plaintiff must directly confer a benefit to the defendant." *Kopel v. Kopel*, 229 So. 3d 812, 818 (Fla. 2017); *accord Wilson v. EverBank, N.A.*, 77 F. Supp. 3d 1202, 1236 (S.D. Fla. 2015). Plaintiffs do not (and cannot) allege that ABAFL conferred a direct benefit to Publix. The most Plaintiffs aver in this regard is that ABAFL conferred a benefit to Publix in the form of medical services provided to the 8 Plan Members. *See* AC ¶¶ 80–84. As this Court has made clear, however, ABAFL providing health care services to Plan Members does not confer a direct benefit on even the Plan, let alone Publix (which is legally separate, and one step removed, from the Plan itself).[9] *Vanguard Plastic Surgery, PLLC v. UnitedHealthcare Ins. Co.*, 2023 WL 2257961, at *12 (S.D. Fla. Feb. 28, 2023) ("[A] medical provider does not confer the necessary direct benefit on an insurer simply by rendering care to someone participating in the plan.") (Singhal, J.); *S. Broward Hosp. Dist. v. ELAP Servs., LLP,* 2023 WL 6547748, at *11 (S.D. Fla. Sept. 30, 2023) ("[T]he Court agrees with recent opinions in this District and finds that the benefit that flows from a healthcare provider to

[9] *See* FN 8, *supra;* 29 U.S.C. § 1132(d).

the insurer is indirect.") (Singhal, J.).[10] Thus, far from "directly confer[ring] a benefit" on Publix, the Amended Complaint, at most, alleges that ABAFL provided a benefit to Plan Members, which in turn *indirectly* benefited the Plan, which in turn *indirectly* benefited Publix.[11] In the end, consistent with the foregoing legal principle, even Plaintiffs themselves ultimately concede that any alleged benefit from ABAFL's services "was conferred [on] the Members"; not directly on Publix. Plaintiffs' conclusory allegations of a "direct benefit" (AC ¶ 84) should be disregarded under *Iqbal/Twombley* and in all events are not enough to state a claim for unjust enrichment under Florida law. Count I should be dismissed.

**b. The Amended Complaint Does Not State a Claim for Promissory Estoppel**

The elements of promissory estoppel are: "(1) a representation as to a material fact that is contrary to a later-asserted position; (2) a reasonable reliance on that representation; and (3) a change in position detrimental to the party claiming estoppel caused by the representation and reliance thereon." *Chiron Recovery Ctr., LLC v. United Healthcare Servs., Inc.*, 2020 WL 3547047, at *8 (S.D. Fla. June 30, 2020). "The promise must be definite and the reliance upon it reasonable." *Id.* Perhaps most fatal for Plaintiffs' promissory estoppel claim, they do not allege any facts demonstrating that Publix made a clear and definite promise to pay ABAFL. In addition, Plaintiffs cannot be said to have reasonably relied on the alleged "pre-authorizations" they cite as the basis for their promissory estoppel claim.

---

[10] To be clear, Publix, as the self-funded Sponsor of the Plan, is not an "insurer." However, Publix is similarly situated to an insurer for purposes of unjust enrichment insofar as any benefit conferred by ABAFL services rendered to a Plan Member would only, at best, indirectly benefit the Plan and its Plan Sponsor, Publix.

[11] *See also Adventist Health Sys./Sunbelt Inc. v. Med. Sav. Ins. Co.*, 2004 WL 6225293 (M.D. Fla. Mar. 8, 2004) ("[A]s a matter of commonsense, the benefits of healthcare treatment flow to patients not insurance companies . . . . cases interpreting Florida law require the 'benefit' in an unjust enrichment claim to be direct, not indirect or attenuated, as would be any putative 'benefit' conferred on an insurer by treating its insureds.").

Plaintiffs allege that they received pre-authorizations from Publix that constitute "unambiguous definite and substantial written promises" of payment for services. AC ¶¶ 91–92. These allegations are insufficient to support a promissory estoppel claim both as a matter of law and of undisputed fact. First, as a matter of law, courts in the Eleventh Circuit have "repeatedly held that a pre-approval of coverage is insufficient to support a claim for promissory estoppel, as pre-approvals of coverage do not equate to a promise to pay any particular amount for a service." *Vanguard Plastic Surgery PLLC v. Cigna Health & Life Ins. Co.*, 2024 WL 181552, at *4 (S.D. Fla. Jan. 17, 2024); *see also Peacock Med. Lab, LLC v. UnitedHealth Grp., Inc.*, 2015 WL 2198470, at *5 (S.D. Fla. May 11, 2015) (noting that this Court "has held that an insurance company's confirmation of coverage is a representation that the patients are covered for the ***type*** of treatment proposed by the health care provider, not a definite promise to pay upon which reliance would be reasonable" (emphasis in original)).

Second, as a matter of fact, the pre-authorizations themselves make clear they are not definitive promises to pay anyone anything. Plaintiffs' failure to include any of the pre-authorizations they rely on with their Amended Complaint is telling, and undoubtedly because the language of those pre-authorizations utterly refutes Plaintiffs' conclusory allegations to the contrary. Indeed, those pre-authorizations expressly state on their face that "[t]his approval does not guarantee payment of benefits." *See* Ex. B at ECF pp. 2, 4. This clear disclaimer directly contradicts any assertion that the pre-authorizations constitute a definitive promise to pay and, moreover, makes clear no one could reasonably rely on them for that purpose. Further, far from resembling a "promise to pay" and consistent with their status as just the opposite (by their stated terms), the pre-authorizations make no mention whatsoever of any dollar amounts, let alone any of the supposedly promised payment amounts, rates, or compensation alleged by Plaintiffs. The

absence of such information is wholly inconsistent with finding an "unambiguous definite and substantial" promise by Publix that could be reasonably relied on by Plaintiffs as such, as is required under applicable Florida precedent. *See id.*

Plaintiffs do not, and cannot, point to any other promise made by Publix that was "definite" and "reasonably relied" upon for the purpose of a promissory estoppel claim. Unable to equate a pre-authorization with a definite promise to pay under Florida law, and because they identify no alternative clear or definite promise by Publix that could support a finding of reasonable reliance, Plaintiffs' count for promissory estoppel must be dismissed.

## III. THE AMENDED COMPLAINT IS A SHOTGUN PLEADING AND SHOULD BE DISMISSED; IF NOT, IT REQUIRES A MORE DEFINITE STATEMENT

Plaintiffs' Amended Complaint must be dismissed for the additional, independent reason that it is an impermissible shotgun pleading. "The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015).

Here, multiple Plaintiffs—ABAFL and, purportedly, 8 Plan Members—are collectively conflated into a single "Plaintiff" throughout the Amended Complaint asserting "as one" the exact same claims against Publix. In other words, no Plaintiff's claim is distinct from any of the other's (even claims purportedly brought on behalf of ABAFL are indistinguishable from those brought by the Plan Members). As such, the Amended Complaint fails to identify which Plaintiff suffered which alleged harm and to what extent. Relatedly, the Amended Complaint does not separately identify the specific claims at issue. Plaintiffs do not set forth the actual services/claims at issue, identify the applicable Plan Member for each, the dates of service, the actual billed charge from ABAFL, the amount allegedly owed, or any other information that would reasonably allow Publix

to determine which precise claims are being challenged by which Plaintiff, which reimbursement decisions are allegedly improper, and which defenses may apply. Such an approach deprives Publix of the ability to discern which facts support which Plaintiff's claims, leaving Publix to guess as to the scope of liability and as to the defenses it should assert against each Plaintiff. That is a classic improper shotgun pleading. *Id.; see also Heinen v. Royal Caribbean Cruises LTD.*, 806 F. App'x 847, 849 (11th Cir. 2020) (affirming dismissal of shotgun pleading because plaintiffs asserted claims "without specifying who suffered what" and without providing clarity on individual harms); *Kindred Hosp. E. L.L.C. v. Blue Cross & Blue Shield of Fla., Inc.*, 2007 WL 601749, at *4 (M.D. Fla. Feb. 16, 2007) ("To comply with the notice requirements of Rules 8 and 10, plaintiff shall separate by count each individual claim, setting forth the patient (identified by initials); the specific insurance plan under which plaintiff is proceeding and whether it is an ERISA-governed plan or not; the dates of treatment at plaintiff's facility; the amount of alleged incurred charges; the amount of charges allegedly remaining outstanding; and the amount of benefits sought on behalf of that patient.").

Similarly, the promissory estoppel claim is wholly untethered to particular Plan Members, services, pre-authorization documents, or claims for monies allegedly owed, and includes no actual evidence of the supposed specific "promises" contained therein. Plaintiffs, themselves, posit that some services did not require "pre-authorizations", but do not identify which services (and related claims) those are. AC ¶ 83 (the "care rendered by ABAFL was either properly authorized or required no such authorization"). Plaintiffs' allegations in paragraphs 91 through 96 of the Amended Complaint likewise fail to identify the specific facts underlying the promissory estoppel claim. Plaintiffs completely fail to identify what exactly was promised, to whom the promises were made, how the authorizations correspond to payment amounts, when the alleged promises were

made, what specific terms were promised, or which authorizations correspond to which services. Indeed, Plaintiffs include ***none*** of the supposed pre-authorizations with the Amended Complaint. Without these critical details, Publix cannot fairly confirm the scope of the transactions at issue, let alone determine on a Plan-Member-by-Plan-Member basis, what conduct allegedly forms the basis of ABAFL's and the other Plaintiffs' claims, or how the purported "promises" were made in the pre-authorizations or allegedly breached.

Finally, insofar as Plaintiffs allege that the claims in the Amended Complaint are "on behalf of" and with the "consent" of the 8 Plan Members, Plaintiffs include no allegations to understand which services were provided on behalf of which Plan Members, which Plan Members supposedly consented to the Amended Complaint, and if so, when, how and why they did so.

Given these deficiencies, the Court should dismiss the Amended Complaint or, in the alternative, require Plaintiffs to file a more definite statement. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 514 (2002); *see also Barmapov v. Amuial*, 986 F.3d 1321, 1329-30 (11th Cir. 2021) (Tjoflat, J., concurring) (when faced with a shotgun pleading, defense counsel "can move the court for a more definite statement pursuant to Federal Rule of Civil Procedure 12(e)" or "move to dismiss the complaint for failure to state a claim under Rule 12(b)(6)").

**CONCLUSION**

For the reasons set forth above, the Amended Complaint should be dismissed with prejudice.

Alternatively, and in the event that the Court does not dismiss, Publix respectfully moves the Court to order Plaintiff to file a more definite statement.

Dated: October 14, 2025

Respectfully submitted,

*/s/ Anne Marie Estevez*
Anne Marie Estevez, FL Bar No. 991694
annemarie.estevez@morganlewis.com
Clay M. Carlton, FL Bar No. 85767
clay.carlton@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
600 Brickell Avenue, Suite 1600
Miami, FL 33131-3075
Telephone: 305.415.3000
Facsimile: 305.415.3001

Brian W. Shaffer (*pro hac vice* pending)
brian.shaffer@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
2222 Market Street
Philadelphia, PA 19103
Telephone: 215.963.5000

Kelly A. Moore (*pro hac vice* pending)
kelly.moore@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178
Telephone: 212.309.6000

*Counsel for Defendant*