**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 25-cv-61906-AHS**

ABA CARES OF FLORIDA, d/b/a
ABA CENTERS OF FLORIDA (o/b/o
Jane and John Doe Members #1-10),

Plaintiffs,

v.

PUBLIX SUPERMARKETS, INC.,

Defendant.
_____________________________________________/

**DEFENDANT PUBLIX SUPER MARKETS, INC.'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO REMAND (ECF NO. 17)**

## TABLE OF CONTENTS


**Page**

INTRODUCTION ........ 1

BACKGROUND ........ 2

LEGAL STANDARD ........ 4

ARGUMENT ........ 5

I. THIS COURT HAS FEDERAL-QUESTION JURISDICTION OVER PLAINTIFFS' CLAIMS FOR UNPAID BENEFITS UNDER THE PUBLIX ERISA PLAN ........ 5

a. Plaintiffs' Claims Are Completely Preempted by ERISA ........ 5

i. Plaintiff-Plan Members could have brought their claims under ERISA § 502(a)(1)(B) ........ 6

1. Plaintiffs' claims fall within the scope of ERISA ........ 6

2. Plaintiff-Plan Members have standing under ERISA § 502(a)(1)(B) ........ 8

ii. No Independent Legal Duty Supports Plaintiffs' Claims ........ 9

1. Plaintiffs' claims do not provide a legal duty ........ 10

2. Plaintiffs' references to various Florida statutes are unavailing ........ 11

3. This is a "right of payment," not a "rate of payment," dispute ........ 14

b. This Court Has Supplemental Jurisdiction Over Any Non-Preempted Claim ........ 19

CONCLUSION ........ 20

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Aetna Health Inc. v. Davila*,
542 U.S. 200 (2004)........................................................................................ passim

*All. Med, LLC v. Blue Cross & Blue Shield of Ga., Inc.*,
2016 WL 3208077 (N.D. Ga. June 10, 2016)..................................................................15

*Apex Toxicology, LLC v. United Healthcare Ins. Co.*,
2017 WL 7806152 (S.D. Fla. June 26, 2017) ..........................................................13, 15

*Beth Wolf, APRN-BC LLC v. Cigna Health & Life Ins. Co.*,
733 F. Supp. 3d 1278 (S.D. Fla. 2024), *appeal dismissed*,
2024 WL 3984064 (11th Cir. Aug. 15, 2024)..................................................................13

*Borrero v. United Healthcare of N.Y., Inc.*,
610 F.3d 1296 (11th Cir. 2010) ....................................................................................8, 15

*Butero v. Royal Maccabees Life Ins. Co.*,
174 F.3d 1207 (11th Cir. 1999) ........................................................................................20

*Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*,
591 F.3d 1337 (11th Cir. 2009) ................................................................................ passim

*Current Wave Med. Sys., Inc. v. Cigna Corp.*,
2007 WL 5389120 (M.D. Fla. Aug. 3, 2007) ..................................................................13

*De La Pedraja v. UnitedHealthcare of Florida, Inc.*,
2010 WL 11570680 (S.D. Fla. Aug. 20, 2010)................................................................13

*Ehlen Floor Covering, Inc. v. Lamb*,
660 F.3d 1283 (11th Cir. 2011) ..........................................................................................5

*Emergency Services of Zephyrhills, P.A. v. Coventry Health Care of Florida, Inc.*,
281 F. Supp. 3d 1339 (S.D. Fla. 2017) ..................................................................16, 17, 18

*Gables Ins. Recovery v. United Healthcare Ins. Co.*,
39 F. Supp. 3d 1377 (S.D. Fla. 2013) ................................................................................8

*Hialeah Anesthesia Specialists, LLC v. Coventry Health Care of Florida, Inc.*,
258 F. Supp. 3d 1323 (S.D. Fla. 2017) ........................................................................17, 18

*Hobbs v. Blue Cross Blue Shield of Alabama*,
276 F.3d 1236 (11th Cir. 2001) ..........................................................................................4

*Hosp., Inc. v. Century Med. Health Plan, Inc.*,
57 F.3d 1040 (11th Cir. 1995) ....................................3, 10, 11

*Jones v. Am. Gen. Life & Acc. Ins. Co.*,
370 F.3d 1065 (11th Cir. 2004) ....................................9

*Koehnen v. Herald Fire Ins. Co.*,
89 F.3d 525 (8th Cir. 1996) ....................................4

*Martin v. Franklin Cap. Corp.*,
546 U.S. 132 (2005)....................................20

*Palmer v. Hosp. Auth. of Randolph Cnty.*,
22 F.3d 1559 (11th Cir. 1994) ....................................19

*Parker v. Scrap Metal Processors, Inc.*,
468 F.3d 733 (11th Cir. 2006) ....................................19

*Pretka v. Kolter City Plaza II, Inc.*,
608 F.3d 744 (11th Cir. 2010) ....................................5

*Rodriguez v. Health Options, Inc.*,
2003 WL 27391269 (S.D. Fla. Sept. 2, 2003) ....................................14

*Royal Canin U. S. A., Inc. v. Wullschleger*,
604 U.S. 22 (2025)....................................5

*Surgery Ctr. of Viera, LLC v. Unitedhealthcare Ins. Co.*,
2020 WL 10501467 (M.D. Fla. July 30, 2020) ....................................14

*United Healthcare Servs., Inc. v. Sanctuary Surgical Ctr., Inc.*,
5 F. Supp. 3d 1350 (S.D. Fla. 2014) ....................................12

**STATUTES**

28 U.S.C. § 1331....................................2

28 U.S.C. § 1441....................................2

28 U.S.C. § 1441(a) ....................................4

28 U.S.C. § 1441(c)(1)(B) ....................................20

28 U.S.C. § 1441(c)(2)....................................20

28 U.S.C. § 1447(c) ....................................20

29 U.S.C. § 1002(7) ....................................8

29 U.S.C. § 1002(8) ....................................................8

29 U.S.C. § 1132(a)(1)(B) ....................................................1, 6, 9

29 U.S.C. § 1144(b)(2)(B) ....................................................17

Employee Retirement Income Security Act of 1974 (ERISA) .................... passim

ERISA § 502(a)....................................................5, 16, 17, 20

ERISA § 502(a)(1)(B).................................................... passim

Fla. Stat. § 624.638 ....................................................13

Fla. Stat. § 627, pt. VI....................................................12

Fla. Stat. § 627, pt. VII....................................................12

Fla. Stat. § 627.601(2)....................................................12

Fla. Stat. § 627.651(4)....................................................12

Fla. Stat. § 627.6131 ....................................................11, 12, 13

Fla. Stat. § 627.6686 ....................................................11, 12

Fla. Stat. § 627.64194(3)....................................................14

Fla. Stat. § 641.19(12)....................................................16

Fla. Stat. § 641.513 ....................................................14, 16, 17

Fla. Stat. § 641.513(5)....................................................16

Fla. Stat. § 641.3154 ....................................................14

Fla. Stat. § 641.3154(1)....................................................14

Fla. Stat. § 641.3155 ....................................................13

Mental Health Parity and Addiction Equity Act....................................................4

## INTRODUCTION

Publix Super Markets, Inc. ("Publix") sponsors and administers a self-funded employee health benefit plan governed by ERISA (the "Publix ERISA Plan"). Plaintiff ABA Cares of Florida LLC d/b/a ABA Centers of Florida, LLC ("ABAFL") is an out-of-network Applied Behavioral Analysis ("ABA") provider that now sues *on behalf of* ("[o/b/o]") "Jane and John Does Members #1-8"—eight Publix ERISA Plan participants and beneficiaries (the "Plan Members")—to recover payments for services that Plaintiffs contend were covered and preauthorized under the Publix ERISA Plan, but not paid. Unless otherwise noted, the nine Plaintiffs (ABAFL and the Plan Members) are referred to collectively in this Opposition as "Plaintiffs," and they are referred to collectively in the Amended Complaint ("AC") as "Plaintiff." AC at 1.

This case belongs in federal court. Despite Plaintiffs' attempt to re-plead this as a "simple collection case" under Florida law (AC ¶ 1), the AC still seeks to "recover benefits due . . . under the terms of [the Publix ERISA Plan]," 29 U.S.C. § 1132(a)(1)(B), and is therefore completely preempted under *Aetna Health Inc. v. Davila*, 542 U.S. 200 (2004). Under ERISA's powerful preemptive regime, state law claims (even ones that are artfully styled and pled) that satisfy *Davila*'s two-pronged test are converted into federal claims upon a showing that: (1) the Plaintiff-Plan Members could have brought their claims under ERISA § 502(a)(1)(B); and (2) no other independent legal duty supports those claims. *See Davila*, 542 U.S. at 210.

Both *Davila* prongs are met here. *First*, adjudicating Plaintiffs' claims necessarily requires interpreting the Publix ERISA Plan's terms and conditions—specifically those governing "covered" services, "preauthorizations," and whether, in light of ABAFL's (and its affiliate's) fraudulent scheme and conduct, Publix has *any* obligation under the Publix ERISA Plan to make payments to Plan Members for ABAFL's purported services. As ERISA beneficiaries, the Plan Members have direct standing to sue Publix to recover such benefits, and Plaintiffs (including

ABAFL) allege in the AC that both causes of action are brought "on behalf of" and with "appropriate consent" from those Plan Members. AC ¶ 1 & at 3 n.1. *Second,* Plaintiffs' attempts to invoke independent legal duties separate and apart from ERISA—through (i) their unjust enrichment and promissory estoppel claims; (ii) various inapplicable Florida statutes; and (iii) the limited "rate of payment" exception to ERISA complete preemption—fail as a matter of law.

Because both *Davila* prongs are satisfied, and because Plaintiffs' post-removal Amended Complaint still cannot avoid or defeat ERISA complete preemption, this Court should deny the Motion to Remand (as well as Plaintiffs' accompanying request for attorney's fees and costs).

**BACKGROUND**

Plaintiffs filed their original Complaint on August 25, 2025, in the Circuit Court of the Seventeenth Judicial Circuit, in and for Broward County, Florida (Case No. CACE 25-013001). The original Complaint asserted four causes of action—two for breach of contract, one for unjust enrichment, and another for promissory estoppel—all seeking the same relief: payment of alleged unpaid benefits under the Publix ERISA Plan. *See* ECF No. 1, Ex. A. Publix was served on August 29, 2025, and timely removed the case on September 23, 2025, pursuant to 28 U.S.C. §§ 1331 and 1441, on the basis of federal-question jurisdiction arising under ERISA. Venue and procedural requisites for removal were satisfied in all respects.

After removal, Plaintiffs filed the AC on September 29, 2025. In a transparent attempt to avoid ERISA's complete preemption doctrine and to return to state court, Plaintiffs abandoned their two breach of contract claims and tried to reframe the action as limited to claims for unjust enrichment and promissory estoppel under Florida law. But the AC still seeks the same relief for the same alleged nonpayment of benefits under the same Publix ERISA Plan. And Plaintiffs make clear that their claims are premised on the allegation that Publix as "Plan Sponsor and Plan Administrator" (AC ¶ 10) "acted by and through its respective employees, agents, apparent agents,

officers, and representatives in operating, engaging and conducting the activities of Publix Super Markets Inc. Group Health Benefit Plan" (AC ¶ 12). They further allege that the services at issue were "covered" under the Publix ERISA Plan. AC ¶ 85. They even go so far as to reference and incorporate into the AC Publix's and the Publix ERISA Plan's Amended Complaint in the related action now pending in this Court at 25:62146-CIV-SINGHAL (ECF No. 16-1) (the "Publix Action"), wherein it is made acutely clear that there is an active dispute regarding the validity of the claims themselves, not merely the amounts billed, and that the controversy arises from claims of ABAFL's (and its affiliate's) fraud (*see id.* ¶ 3). Because the original Complaint was properly removed to this Court (Plaintiffs do not even dispute this point), and because Plaintiffs' claims in the AC continue to be completely preempted by ERISA (indeed, eight of the Plaintiffs are *Plan participants or beneficiaries in the ERISA Plan*, the claims are brought "on behalf of" those participants and beneficiaries, and the claims in the AC could have been brought under § 502(a)(1)(B) and have no independent legal basis), Plaintiffs' Motion to Remand should be denied.

Finally, it should not be lost on this Court that the instant Motion to Remand is nothing more than jurisdictional gamesmanship by Plaintiffs. Plaintiffs' affirmative conduct demonstrates a recognition this case belongs in federal court – or, at the very least, that is certainly what Plaintiffs represented first to the Middle District of Florida in seeking to transfer the Publix Action here, and then to this Court when Plaintiffs consented to consolidation of this case and the Publix Action. Indeed, on October 8, 2025, Plaintiffs moved the Middle District of Florida to transfer a related case to this Court ***"[i]n the interest of judicial economy and efficiency, and to avoid the risk of inconsistent rulings[.]"*** *See* Publix Action, ECF No. 30 at 3 (emphasis added). Relatedly, on October 28, 2025, Plaintiffs consented to consolidation of the two related actions in the Southern District after transfer. *See* ECF No. 20 at 2. Perhaps that is why this Court quite understandably

"assume[d] that the remand motion ha[d] been abandoned." Publix Action, ECF No. 41 at 2. *Cf. Koehnen v. Herald Fire Ins. Co.*, 89 F.3d 525, 528 (8th Cir. 1996) ("[a] party that engages in affirmative activity in federal court typically waives the right to seek a remand").[1]

Now, instead of proceeding as a consolidated action "to avoid the risk of inconsistent rulings," Plaintiffs have moved to remand this case. In so doing, they make clear their real desire is to avoid federal review of their hopelessly deficient AC. *See* Plaintiffs' Opposition to Publix's Motion to Dismiss (ECF No. 19 at 3) ("[t]he Court should not even decide Defendant's Motion to Dismiss because this Court lacks subject matter jurisdiction over the case…."). Plaintiffs' ploys should not be rewarded; the Motion to Remand should be denied.

## LEGAL STANDARD

A defendant generally may remove a case to federal district court if the district court has original jurisdiction over the case. 28 U.S.C. § 1441(a). While a party seeking removal has "the burden of producing facts supporting the existence of federal subject matter jurisdiction by a preponderance of the evidence," *Hobbs v. Blue Cross Blue Shield of Alabama*, 276 F.3d 1236, 1242 (11th Cir. 2001), this Court "should not sanction devices intended to prevent a removal to a Federal court where one has that right, and should be equally vigilant to protect the right to proceed in the Federal court as to permit the state courts, in proper cases, to retain their own jurisdiction."

---

[1] And even as Plaintiffs seek remand, claiming that they are asserting only state-law causes of action in the AC, they continue to engage in a jurisdictional "shell game" and reveal their intent to try to inject other federal issues into the case should it go forward. *See* Plaintiffs' Opposition to Publix's Motion to Dismiss (ECF No. 19 at 3, 9) (arguing Publix owed them a duty under the "federal Mental Health Parity and Addiction Equity Act"). Plaintiffs also go so far as to suggest that Publix's federal RICO, RICO conspiracy, and ERISA claims in the Publix Action should have been compulsory counterclaims in this action because of the interconnectedness of those federal claims to their own. *See* Mot. at 5 n.3; *see also* Publix Action, ECF No. 30 at 6–8.

*Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 766 (11th Cir. 2010) (quoting *Wecker v. Nat'l Enameling & Stamping Co.*, 204 U.S. 176, 186 (1907)).

## ARGUMENT

### I. THIS COURT HAS FEDERAL-QUESTION JURISDICTION OVER PLAINTIFFS' CLAIMS FOR UNPAID BENEFITS UNDER THE PUBLIX ERISA PLAN

#### a. Plaintiffs' Claims Are Completely Preempted by ERISA

The "complete preemption doctrine of ERISA creates an exception" to the general rule that a federal court's jurisdiction "is determined by looking to the face of the plaintiffs' well-pleaded complaint." *Ehlen Floor Covering, Inc. v. Lamb*, 660 F.3d 1283, 1287 (11th Cir. 2011). The doctrine "derives from ERISA's civil enforcement provision, § 502(a), which has such 'extraordinary' preemptive power that it 'converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1344 (11th Cir. 2009) (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65–66 (1987)). Under the doctrine, "any 'cause[] of action within the scope of the civil enforcement provisions of § 502(a) [is] removable to federal court.'" *Id.* As such, Plaintiffs' reliance on *Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22, 30 (2025), is misplaced. *See* Mot. at 3, 7. That case addressed a plaintiff's voluntary removal of expressly pleaded federal claims and the resulting loss of supplemental jurisdiction—*i.e.*, not a case like this one where the doctrine of complete preemption under ERISA § 502(a) applied to both the original and amended pleadings. Plaintiffs' post-removal deletion of two of those claims did not undo ERISA or federal-question jurisdiction.

The U.S. Supreme Court in *Aetna Health Inc. v. Davila*, developed a two-prong test to assess complete preemption under ERISA: (1) whether the plaintiff could have brought the claim under ERISA § 502(a)(1)(B); and (2) whether no other independent legal duty supports the

plaintiff's claim. *See Davila*, 542 U.S. at 210; *Conn. State Dental Ass'n*, 591 F.3d at 1345. Both prongs are satisfied here. Plaintiffs' claims fall within the scope of ERISA—primarily because they require application and interpretation of the Publix ERISA Plan's terms and conditions and the Plan Members—"participants" or "beneficiaries" under ERISA—have direct standing to bring their claims under § 502(a)(1)(B). Additionally, Plaintiffs cannot (and have not) plausibly alleged any applicable legal duty separate and apart from the Publix ERISA Plan.

**i. Plaintiff-Plan Members could have brought their claims under ERISA § 502(a)(1)(B)**

The first prong of the *Davila* test centers on whether Plaintiffs could have brought their claims under § 502(a)(1)(B). It is satisfied if, based on the AC, two criteria are met: "(1) the plaintiff's claim must fall within the scope of ERISA; and (2) the plaintiff must have standing to sue under ERISA." *Connecticut State Dental Ass'n*, 591 F.3d at 1350. The AC alleges both.

*1. Plaintiffs' claims fall within the scope of ERISA*

ERISA § 502(a)(1)(B) authorizes civil actions by "a participant or beneficiary" to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Here, notwithstanding Plaintiffs' attempts to dress up their claims as an ordinary collection action, Plaintiffs bring their claims "on behalf of" eight participants or beneficiaries in the Publix ERISA Plan and seek the very same relief authorized by ERISA § 502(a)(1)(B): recovery of benefits allegedly due under the terms of the Publix ERISA Plan.

This conclusion is confirmed by the fact that every aspect of this case is tied to the Publix ERISA Plan. The action is brought by ABAFL "on behalf of" eight Plan Members. They are collectively referred to as the "Plaintiff" in the AC. Publix is a Defendant in this lawsuit because it is the "Plan Sponsor and Plan Administrator" (AC ¶ 10) and allegedly "acted by and through its

respective employees, agents, apparent agents, officers, and representatives in ***operating, engaging and conducting the activities of Publix Super Markets Inc. Group Health Benefit Plan***." AC ¶ 12 (emphasis added). And adjudicating Plaintiffs' claims requires applying and interpreting the Publix ERISA Plan's terms and conditions, including: (i) whether ABAFL's services are covered under the terms of the Publix ERISA Plan; (ii) whether preauthorizations allegedly issued in favor of Plan Members obligated any payment under the Publix ERISA Plan's terms; (iii) what amounts the Publix ERISA Plan provides to Plan Members as benefits for out-of-network services; and (iv) whether there is any Publix or Publix ERISA Plan obligation to pay for such benefits when, as here, they were procured by ABAFL's (and its affiliate's) fraud. AC ¶¶ 85, 91–92, 94. That the issues in this case all require application and interpretation of the Publix ERISA Plan to determine whether Plaintiffs can obtain the relief they seek (the relief of § 502(a)(1)(B)) only confirms that the complete preemption doctrine applies.

The specific allegations pertaining to Plaintiffs' claims further reveal that the claims seek benefits and would require interpretation of the Publix ERISA Plan documents. Under the unjust enrichment claim, Plaintiffs allege that Publix "collect[ed] premiums from the [Plan] Members," agreed "to properly reimburse providers that render covered medical services," and must pay "the value thereof to the provider." AC ¶ 85. Under the promissory estoppel claim, Plaintiffs allege that: (i) "[a]t all times relevant, the services provided by ABAFL were performed pursuant to pre-authorizations received from [Publix]"; (ii) "[t]hese authorizations constitute unambiguous definite and substantial written promises to Plaintiff[s] that [ABAFL] would be paid for the services [ABAFL] rendered upon the [Plan] Members"; and (iii) Plaintiffs "had a reasonable expectation to be properly reimbursed pursuant to the subject authorizations." AC ¶¶ 91–92, 94.

But "premiums," proper reimbursement, "value thereof to the provider," and "preauthorization" are not freestanding terms or provisions codified in some separate or standalone agreement; instead, they are necessarily just references to the actual Publix ERISA Plan terms and require interpreting the Publix ERISA Plan's provisions. Stated differently, in order to understand what constitutes a proper reimbursement, what the "value" of that reimbursement, if any, might be, and the contours of the purported binding and enforceable "preauthorizations," this Court must review and analyze the Publix ERISA Plan documents themselves. *See, e.g.*, *Gables Ins. Recovery v. United Healthcare Ins. Co.*, 39 F. Supp. 3d 1377, 1388 (S.D. Fla. 2013) ("If the right to payment derives from the ERISA benefit plan as opposed to another independent obligation, the resolution of a right to payment dispute requires an interpretation of the plan."); *see also Borrero v. United Healthcare of N.Y., Inc.*, 610 F.3d 1296, 1304 (11th Cir. 2010) ("Here, the content of the claims necessarily requires the court to inquire into aspects of the ERISA plans because of the invocation of terms defined under the plans."). Thus, Plaintiffs' claims necessarily fall within the scope of ERISA and are completely preempted.

2. *Plaintiff-Plan Members have standing under ERISA § 502(a)(1)(B)*

Plaintiffs next assert that "[b]ecause Publix has not shown that [ABAFL] is a participant, a beneficiary, or a valid assignee with enforceable ERISA rights, ERISA standing is lacking." Mot. at 14. However, that assertion overlooks that there are nine plaintiffs in this action: ABAFL ***and*** the 8 Plan Members. Those 8 Plan Members are participants or beneficiaries under ERISA. 29 U.S.C. §§ 1002(7), (8). The AC makes explicitly clear that it uses the term "Plaintiff" to refer "***collectively***" to both ABAFL and the 8 Plan Members. AC at 1 (emphasis added). It also alleges that "***ABAFL has appropriate consent [from the Plan Members] to pursue this action***," which as explained above seeks payment of benefits to Plan Members under the Publix ERISA Plan as relief. AC at 3 n.1 (emphasis added). The two counts of the AC are thus brought identically in all

respects on behalf of all of the 8 Plan Members ***and*** ABAFL as one "Plaintiff" and pursue the exact same relief on their collective behalf. AC ¶¶ 89, 96. The claims of the 8 Plan Members and any claims purportedly brought on behalf of ABAFL are one and the same and inextricably intertwined.

Under the AC, the 8 Plan Members, who together with ABAFL comprise "Plaintiff," plainly have ERISA standing as beneficiaries. The AC concedes that the 8 Plan Members are (or were) "beneficiaries" of the Publix ERISA Plan (AC ¶ 16), and ERISA allows "beneficiaries" to sue for benefits under 29 U.S.C. § 1132(a)(1)(B). Moreover, Publix's obligations regarding out-of-network providers are only owed to Plan Members, so any rights ABAFL may have are derivative of the right of the Plan Members under the Publix ERISA Plan. Based on these allegations, the 8 Plan Members could have asserted their claims against Publix under ERISA § 502(a)(1)(B)—especially and particularly because they have direct standing as ERISA beneficiaries. Indeed, Plaintiffs' promissory estoppel claim is specifically cognizable under § 502(a)(1)(B). *See, e.g.*, *Jones v. Am. Gen. Life & Acc. Ins. Co.*, 370 F.3d 1065, 1069 (11th Cir. 2004). As Plaintiffs' claims fall under ERISA and the Plan Members have the requisite standing,[2] the first element of the *Davila* test demonstrating complete preemption and federal-question jurisdiction is satisfied.

**ii. No Independent Legal Duty Supports Plaintiffs' Claims**

The second prong of the *Davila* test centers on whether Plaintiffs' "claims are predicated on a legal duty that is independent of ERISA." *Conn. State Dental Ass'n*, 591 F.3d at 1353. Plaintiffs' attempt to concoct independent legal duties separate and apart from ERISA—namely

[2] ABAFL's argument that notwithstanding the allegations of the AC, it does not have its own standing to assert a claim under § 502(a)(1)(B) (Mot. at 12–14) does not require remand. The Court should exercise supplemental jurisdiction over its claim. *See infra* at 20.

through (i) their unjust enrichment and promissory estoppel claims; (ii) various Florida statutes; and (iii) the limited "rate of payment" exception to ERISA complete preemption—all fail.

*1. Plaintiffs' claims do not provide a legal duty*

Plaintiffs carefully avoid citing ERISA in the AC, styling their claims as state-law causes of action for unjust enrichment and promissory estoppel. AC ¶¶ 78–96. However, courts have consistently rejected such artful pleading to circumvent ERISA preemption. *See Davila*, 542 U.S. at 214 ("[D]istinguishing between pre-empted and non-pre-empted claims based on the particular label affixed to them would 'elevate form over substance and allow parties to evade' the pre-emptive scope of ERISA" by simply relabeling their claims).

The AC's causes of action themselves make clear they are explicitly predicated on a duty under the Publix ERISA Plan and not independent of it. *See, e.g.,* AC ¶ 85 ("The circumstances indicate that it would be inequitable/unjust for [Publix] to be permitted to collect premiums from the [Plan] Members and subscribers in return for agreeing to properly reimburse providers that render covered medical services without paying the value thereof to the provider."); *see also id.* ¶ 92 (claiming authorizations ***issued pursuant to and under the Publix ERISA Plan*** "constitute unambiguous definite and substantial written promises to [ABAFL] that it would be paid for the services [ABAFL] rendered upon the [Plan] Members"). The AC itself continually reiterates how any recovery of benefits necessarily arise out of the duties and obligations that Publix may have or owe under the Publix ERISA Plan—namely because "Publix, as plan administrator, retained the ultimate responsibility for payment of the claims" and because, "***[a]t all [] relevant times***, [Publix] acted by and through its respective employees, agents, apparent agents, officers, and representatives ***in operating, engaging and conducting the activities of Publix Super Markets Inc. Group Health Benefit Plan***." AC ¶¶ 12, 27 (emphases added).

Because Plaintiffs seek to recover allegedly unpaid benefits purportedly due under the Publix ERISA Plan via state-law causes of action, such claims are completely preempted by ERISA. As the U.S. Supreme Court has instructed: "'When the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, ***even if pleaded in terms of state law***, is in reality based on federal law.' ERISA is one of these statutes." *Davila*, 542 U.S. at 207–08 (internal citation omitted) (emphasis added). This preemptive regime necessarily encompasses Plaintiffs' unjust enrichment claim that Publix collected Plan premiums from Plan Members, but failed to reimburse Plaintiffs for services that ABAFL allegedly rendered at usual and customary rates (AC ¶¶ 78–89), and Plaintiffs' promissory estoppel claim that the preauthorizations issued under and pursuant to the Publix ERISA Plan were "unambiguous definite and substantial written promises" to pay (AC ¶ 92). *See Variety Child.'s Hosp., Inc. v. Century Med. Health Plan, Inc.*, 57 F.3d 1040, 1042 (11th Cir. 1995) ("[W]here state law claims . . . are based upon the failure of a covered plan to pay benefits, the state law claims have a nexus with the ERISA plan . . . and . . . were correctly dismissed as preempted.").

*2. Plaintiffs' references to various Florida statutes are unavailing*

To combat this stark reality regarding the complete preemption of their unjust enrichment and promissory estoppel claims, Plaintiffs go on a fishing expedition to find other potential bases. To start, Plaintiffs unsuccessfully attempt to invoke various Florida statutes—principally Fla. Stat. §§ 627.6131 and 627.6686—to conjure up any possible independent legal duty that is separate and apart from ERISA. *See* Mot. at 16–17; *see also* AC ¶ 7 ("This is a civil action for damages to recover underpaid healthcare claims pursuant to Florida Statute §§ 627.6131 and 627.6686 . . ..").

According to Plaintiffs, Section 627.6131 "obligates insurers and plan administrators, like Publix, to process and pay properly submitted claims within specified time frames and to pay interest if payments are delayed. These statutes govern the timing and sufficiency of payment

once a claim is authorized, creating a procedural duty that exists independently of any ERISA benefit determination." Mot. at 16 (internal citation omitted). Additionally, according to Plaintiffs, Section 627.6686 "requires every large-group health plan issued or renewed in Florida to provide coverage for behavioral health treatment, including ABA, for children diagnosed with ASD. The statute mandates such coverage regardless of the type of plan and reflects a substantive legal obligation imposed by state law, not by an ERISA plan." *Id.* Taken together, Plaintiffs contend that "[t]hese statutory duties owed by Publix to [ABAFL] arise independently of any ERISA plan and require no plan interpretation." *Id.* at 17. Plaintiffs misread these statutes and misstate the law.

*First*, by their terms, neither provision applies to *group* health plans established under ERISA, like the Publix ERISA Plan.[3] *See* Fla. Stat. § 627.601(2); *see also United Healthcare Servs., Inc. v. Sanctuary Surgical Ctr., Inc.*, 5 F. Supp. 3d 1350, 1364 (S.D. Fla. 2014) (as to Section 627.6131, "it is apparent that the statutory provision in question—which falls under Part VI of Florida Chapter 627, Insurance Rates and Contracts—**governs *individual*, and not *group*, health *insurance policies***") (emphasis added). Likewise, Section 627.6686 is like all of the other provisions within Part VII of Chapter 627 that do "not apply to any plan which is established or maintained by an individual employer in accordance with [ERISA]." Fla. Stat. § 627.651(4); *see also United Healthcare Servs.*, 5 F. Supp. 3d at 1364 ("In contrast, group health policies are governed by the provisions of Part VII of Chapter 627, Florida Statutes, 'Group, Blanket and Franchise Health Insurance Policies,' ***which specifically excepts from the scope of its application***

[3] Publix is the Sponsor and Administrator of the Publix ERISA Plan, under which Publix pays the majority of the total cost for health care coverage for its employees. Stated differently, Publix and the Publix ERISA Plan are two separate and distinct entities. Plaintiffs improperly conflate and combine the two entities, notably failing to include the Publix ERISA Plan, itself, as a Defendant.

***any plan established or maintained by an individual employer in accordance with ERISA*.") (quoting Fla. Stat. § 627.651(4)) (emphasis added).

*Second*, even if they did apply here (and they do not), neither of the cited provisions from Chapter 627 affords Plaintiffs a private right of action. *See, e.g.*, *Beth Wolf, APRN-BC LLC v. Cigna Health & Life Ins. Co.*, 733 F. Supp. 3d 1278, 1284 (S.D. Fla. 2024), *appeal dismissed*, 2024 WL 3984064 (11th Cir. Aug. 15, 2024) (the court was "not persuaded that sections 627.6131 and 624.638 impliedly confer private causes of action upon healthcare providers"—meaning that "[t]he Plaintiffs' claim premised upon those statutes is dismissed with prejudice, and further amendment would be futile"). Thus, the inapplicable provisions of Chapter 627, which, in any event, do not afford Plaintiffs a private right of action, are not a basis independent of ERISA for Plaintiffs' otherwise-preempted claims that merely seek recovery of benefits allegedly due under the terms of the Publix ERISA Plan. Accordingly, they must be pursued, if at all, under § 502(a)(1)(B).

Finally, courts within this Circuit have held that the other statutes referenced in Plaintiffs' Motion to Remand—namely Sections 627.6131 and 641.3155 (*see* Mot. at 4, 13, 16–17)—are preempted by ERISA. *See Apex Toxicology, LLC v. United Healthcare Ins. Co.*, 2017 WL 7806152, at *7 (S.D. Fla. June 26, 2017) (denying remand, dismissing the complaint, and holding that "[t]he plaintiff's claim under Florida's prompt payment law . . . is also not based on an independent legal duty"); *see also De La Pedraja v. UnitedHealthcare of Florida, Inc.*, 2010 WL 11570680, at *3 (S.D. Fla. Aug. 20, 2010) (determining that Section 641.3155 did not impose a separate and independent legal duty and denying remand because the provider's "claims inevitably require reference to his patients' benefits plans and require inquiry into whether [the defendant] properly denied benefit payments for the medical services he rendered"); *Current Wave Med. Sys.,*

*Inc. v. Cigna Corp.*, 2007 WL 5389120, at *2 (M.D. Fla. Aug. 3, 2007) (same). And, though only mentioned briefly in the Motion (*see* Mot. at 13), it is also worth noting that Sections 641.3154(1) and 627.64194(3) are similarly preempted by ERISA. *See Rodriguez v. Health Options, Inc.*, 2003 WL 27391269, at *3–6 (S.D. Fla. Sept. 2, 2003) (determining that violations of Sections 641.3154 and 641.513 for payment for services provided to beneficiaries of ERISA-governed plans are preempted by ERISA). With respect to Plaintiffs' reference to Section 627.64194(3), this provision states that an insurer is liable for services "provided to an insured in accordance with the coverage ***terms of the health insurance policy***." Fla. Stat. § 627.64194(3) (emphasis added). "Since this claim would require the Court to determine coverage under the ERISA Plan, it's preempted." *Surgery Ctr. of Viera, LLC v. Unitedhealthcare Ins. Co.*, 2020 WL 10501467, at *4 (M.D. Fla. July 30, 2020).

*3. This is a "right of payment," not a "rate of payment," dispute*

Unable to find an independent legal duty within its two pled claims or various Florida statutes that would remove this case from the powerful preemptive scope of ERISA, Plaintiffs also contend that this is a "rate-of-payment dispute, not a right-of-payment dispute." Mot. at 11. While "rate of payment" disputes can fall outside of the scope of ERISA if a separate, standalone agreement (typically between a provider and an insurer) exists that dictates the payment terms, "right of payment" disputes involve coverage determinations under the terms of an ERISA plan and are completely preempted. Here, this distinction does not save Plaintiffs' claims from complete federal preemption under ERISA for three reasons.

*First*, this is not a "rate of payment" dispute because Plaintiffs cannot point to an independent provider-insurer agreement. Claims may constitute a "rate of payment" dispute not subject to complete preemption under ERISA if they involve independent provider-insurer agreements that are not subject to ERISA. In *Connecticut State Dental*, for example, providers

were in-network providers suing under ***separate and distinct network agreements***, which imposed duties independent of the ERISA plan in question. *Connecticut State Dental Ass'n*, 591 F.3d at 1350. Of import here, the Eleventh Circuit later reaffirmed this notion that the "rate of payment" analysis is directly tied to the presence of an independent provider-insurer agreement: "In *Connecticut State Dental*, we discussed two types of claims that can be made by providers against insurers: ***those challenging the 'rate of payment' pursuant to the provider-insurer agreement***, and those challenging the 'right to payment' under the terms of an ERISA beneficiary's plan." *Borrero*, 610 F.3d at 1302 (emphasis added). *Borrero* makes clear that, at a minimum, a "rate of payment" theory is only potentially available when a provider is suing under an agreement to which it is a party; otherwise, there is no independent legal duty. Indeed, some district courts in the Eleventh Circuit have concluded that out-of-network providers' claims are never considered pure "rate of payment" disputes because rate of payment claims are necessarily "governed by the provider agreement," and there is "no provider agreement in cases involving an out-of-network provider." *See Apex Toxicology,* 2017 WL 7806152, at *5; *All. Med, LLC v. Blue Cross & Blue Shield of Ga., Inc.,* 2016 WL 3208077, at *3 (N.D. Ga. June 10, 2016).

Here, Plaintiffs concede that ABAFL is an out-of-network provider. *See* AC ¶ 58 (admitting that "[a]t all material times, ABAFL had no direct agreement with [Publix]"). That means ABAFL is not party to any agreement, such as a standalone in-network provider agreement, that would create or impose additional obligations or duties regarding the rate of return of any payment on the part of Publix. And Plaintiffs ("Plaintiff" in the AC) includes the actual participants and beneficiaries in the Publix ERISA Plan. *See* AC at 1, 3 n.1. As such, any duties that Publix may owe arise solely from its alleged "operating, engaging, and conducting the activities of" the Publix ERISA Plan, as the AC admits. AC ¶ 12.

*Second*, Plaintiffs cannot point to a statutory basis under Florida law that creates an independent legal duty on Publix or the Publix ERISA Plan to pay a certain amount in benefits. *See supra* discussion at 11–14. In their Motion to Remand, Plaintiffs rely on *Emergency Services of Zephyrhills, P.A. v. Coventry Health Care of Florida, Inc.*, 281 F. Supp. 3d 1339 (S.D. Fla. 2017), when discussing the rate of payment inquiry. Mot. at 11–12. However, *Zephyrhills* further illuminates why this is ***not*** a rate of payment dispute. There, the defendant proffered the same argument as Publix in this case—that *Connecticut State Dental* and its progeny "involved claims for reimbursement under a provider agreement," meaning that "in the absence of such an agreement, any claims for reimbursement necessarily fall within the scope of [ERISA §] 502(a)." *Zephyrhills,* 281 F. Supp. 3d at 1345–46. This District noted that "[t]his is generally true where ***no other contractual or statutory basis for a provider's reimbursement claim exists***." *Id.* at 1346 (emphasis added). For its independent statutory basis (separate and apart from ERISA), the plaintiff invoked Florida's emergency services payment statute—Fla. Stat. § 641.513(5)—which permits providers without contracts with a health maintenance organization ("HMO") to seek reimbursement for emergency procedures performed. *Id.* This District, thus, held that the plaintiff's claims were not subject to complete preemption because they did not "require interpretation of the Plan terms, but instead ***interpretation and application of an existing state statute***." *Id.* at 1346 (emphasis added).

Perhaps most fatal for Plaintiffs, Section 641.513 only applies to HMOs licensed under Florida law. *See* Fla. Stat. § 641.19(12). Whereas Coventry (the defendant in *Zephyrhills*) was a Florida-licensed HMO, the Publix ERISA Plan (in this case) is self-funded by Publix and

established and maintained in accordance with ERISA.[4] This distinguishing characteristic places the Publix ERISA Plan out of the reach of Section 641.513 and other Florida statutes that seek to regulate self-funded employee health benefit plans under ERISA. *See* 29 U.S.C. § 1144(b)(2)(B) (noting that no ERISA-governed plan "shall be deemed to be an insurance company or other insurer . . . for purposes of any law of any State purporting to regulate insurance companies [or] insurance contracts"). Given this, and as discussed above, there is no other contractual or statutory basis for Plaintiffs' reimbursement claims. Thus, any recovery necessarily falls within the scope of ERISA § 502(a).

*Third*, this is not a "rate of payment" dispute because the specific claims for reimbursement in question have not yet been paid (or even partially paid) by Publix. In deciphering whether claims involve a "rate of payment" or a "right of payment," this Court "must determine the character of the Plaintiffs' claims: do they challenge the ***rate*** of payment the Plaintiffs received from [an insurer], or do they seek the ***right*** to be paid?" *Hialeah Anesthesia Specialists,* 258 F. Supp. 3d at 1329 (emphasis in original). Plaintiffs, in Paragraphs 69 through 77 of the AC, mischaracterize and misconstrue the Publix Action (recently transferred to this Court) as only focusing on "rate of payment" versus "right of payment." AC ¶¶ 69–77. In doing so, Plaintiffs conveniently overlook that the Publix Action involves Publix's decision ***not to pay*** approximately $15 million stemming from "false and fraudulent submissions made by [ABAFL and its affiliate]

[4] Of import here, *Hialeah Anesthesia Specialists, LLC v. Coventry Health Care of Florida, Inc.* did not interpret *Connecticut State Dental* as requiring an express provider-insurer agreement—meaning that out-of-network providers could assert "rate of payment" theories based on an implied-in-law contract. 258 F. Supp. 3d 1323, 1327–29 (S.D. Fla. 2017). However, the *Hialeah Anesthesia Specialists* court reasoned (just as the *Zephyrhills* court did) that the plaintiff had properly relied on Section 641.513, which implicates a legal duty owed by Florida-licensed HMOs to reasonably reimburse out-of-network emergency medical service providers for services rendered to the HMO's subscribers. *Id.* Here, Plaintiffs cannot allege a similar, independent legal duty (separate and apart from ERISA) that may be owed by Publix to Plaintiffs.

from October 2024 to present" in connection with benefits allegedly provided by ABAFL to Publix ERISA Plan beneficiaries. *See* Publix Action, ECF No. 9, Am. Compl. ¶ 9. Thus, contrary to Plaintiffs' assertions throughout the AC, Publix has not "underpaid" the current amounts in dispute, nor has it "pa[id] an arbitrary amount" on these claims. AC ¶¶ 7, 64–65, 68, 70. Instead, payment has not been made on any of these claims—following Publix's determination that the fraudulent out-of-network circumvention scheme violated the Publix ERISA Plan's terms and provisions and does not entitle Plaintiffs to reimbursement under the Publix ERISA Plan or ERISA. Indeed, the AC confirms this point, admitting that the disputed claims remain subject to ongoing Plan investigation and have certainly not reached any final adjudication or "payment." *See* AC ¶ 29 ("[Defendant] has placed the subject claims in a pend status."); *see also* ECF No. 22 at 3 n.2 ($0 paid for each of the pended claims at issue).

That Publix has not paid ***any*** amounts on the current claims in dispute makes this case distinguishable from the actual "rate of payment" disputes Plaintiffs cite throughout the AC and their Motion to Remand. For example, in *Hialeah Anesthesia Specialists*, the court reasoned that the "rate of payment" analysis applied because the complaint there—unlike in this case—was "not based on any claims that were [] denied by [the insurer]"; instead, the complaint "concern[ed] ***only*** claims which [the insurer] ha[d] ***adjudicated, deemed covered by the respective patients' health plans, and paid***[.]" *Hialeah Anesthesia Specialists*, 258 F. Supp. 3d at 1329 (emphases added). Similarly, *Zephyrhills* instructs that "[a] rate of payment claim ***challenges the amount already paid***, but a right to payment claim challenges the insurer's denial of payment, which is based on a coverage determination under an ERISA plan." *Zephyrhills*, 281 F. Supp. 3d at 1345 (emphasis added).

Thus, the AC presents a "right of payment" dispute—centered on, amongst other things, whether ABAFL's services are covered and out-of-network reimbursement should be paid at all under the terms of the Publix ERISA Plan, and on whether preauthorizations allegedly issued in favor of Plan Members obligated any payment under the Publix ERISA Plan's terms. AC ¶¶ 85, 91–92, 94. Moreover, even if this Court determined that Plaintiffs' claims could be considered a challenge to both the rate of payment and the right of payment, such so-called "hybrid claims" are also preempted. *See Conn. State Dental Ass'n,* 591 F.3d at 1350–51.

As a result, the AC does not arise from any independent legal duty with Publix, and the second element of the *Davila* test is satisfied. Having satisfied both prongs of the *Davila* test, Plaintiffs' claims for unpaid benefits purportedly due to them under the Publix ERISA Plan are completely preempted by ERISA, and removal is therefore proper.

**b. This Court Has Supplemental Jurisdiction Over Any Non-Preempted Claim**

Even if this Court finds that only one of Plaintiffs' causes of action is *completely* preempted by ERISA, this Court can and should exercise supplemental jurisdiction over the other non-preempted claim because that claim would still "arise out of a common nucleus of operative fact with a substantial federal claim," *Parker v. Scrap Metal Processors, Inc.*, 468 F.3d 733, 743 (11th Cir. 2006), and would be "so related to claims in the action within [the] original jurisdiction [of the court] that they form part of the same case or controversy," *Palmer v. Hosp. Auth. of Randolph Cnty.*, 22 F.3d 1559, 1563 (11th Cir. 1994) (quoting 28 U.S.C. § 1367(a)). The "common nucleus of operative fact" would still center on whether and to what extent Publix had an obligation to pay for the ABA therapy services rendered to Plan Members. Relatedly, across Plaintiffs' two claims, the relief sought is identical: payment of the unpaid benefits. The interconnected nature of the claims and the relief sought reaffirm that they stem from the same controversy and set of facts.

Relatedly, even if this Court finds that only the Plan Members have standing and ABAFL does not, this Court should still exercise jurisdiction over this entire action. *See Butero v. Royal Maccabees Life Ins. Co.*, 174 F.3d 1207, 1215 (11th Cir. 1999) (affirming denial of the motion to remand, holding that the ERISA beneficiary's claims were preempted, and concluding that because the non-preempted party's claims were joined with the ERISA beneficiary's claims, the court had jurisdiction over the entire action) (citing 28 U.S.C. § 1441(c)). 28 U.S.C. §§ 1441(c)(1)(B) and (c)(2) also do not require remand of any claim, because both of Plaintiffs' claims arise from the same nucleus of operative fact—the alleged non-payment of benefits purportedly due under the Publix ERISA Plan. No unrelated state-law claims exist that would trigger severance and remand.

Thus, Publix has demonstrated, by a preponderance of the evidence, that this Court has the requisite federal-question jurisdiction (and, if applicable, supplemental jurisdiction) for Publix to remove this case to this Court.[5] ERISA's civil enforcement provision, § 502(a), is the exclusive remedy for ERISA violations and preempts any state-law claims. *See Davila*, 542 U.S. at 208–09. As such, Plaintiffs' claims for recovery of benefits purportedly due under the Publix ERISA Plan should necessarily be classified as federal claims and properly adjudicated in this Court.

**CONCLUSION**

For the foregoing reasons, Publix respectfully requests that Plaintiffs' Motion to Remand and their request for attorney's fees and costs be denied.

---

[5] In all events, this Court should deny Plaintiffs' request, pursuant to 28 U.S.C. § 1447(c), for attorney's fees and costs (*see* Mot. at 19) because Publix had an "objectively reasonable basis" for removal. *See Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 136 (2005). Plaintiffs' originally pled claims referred to the "preauthorizations" issued under the Publix ERISA Plan and alleged that Publix had breached its "policies with Members." *See* ECF No. 1, Ex. A, Compl. ¶¶ 69, 81, 85. And, upon review of Publix's Notice of Removal, Plaintiffs subsequently changed course—filing the AC, striking two claims, reducing references to the Publix ERISA Plan, and invoking new state statutes to attempt to avoid ERISA preemption. Publix therefore had an objectively reasonable basis for removal, making fees and costs to Plaintiffs unwarranted even if remand is granted.

Dated: November 6, 2025

Respectfully submitted,

*/s/ Clay M. Carlton*
Clay M. Carlton
Florida Bar No. 85767
clay.carlton@morganlewis.com
Anne Marie Estevez
Florida Bar No. 991694
annemarie.estevez@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
600 Brickell Avenue, Suite 1600
Miami, FL 33131-3075
Telephone: 305.415.3000
Facsimile: 305.415.3001

Brian W. Shaffer (admitted *pro hac vice*)
brian.shaffer@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
2222 Market Street
Philadelphia, PA 19103
Telephone: 215.963.5000

Kelly A. Moore (admitted *pro hac vice*)
kelly.moore@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178
Telephone: 212.309.6000

*Counsel for Defendant*